IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI, CENTRAL DIVISION

| | | |
|---|---|---|
| EARL RINGO, JR., | ) | |
| | ) | |
| JOHN CHARLES MIDDLETON, | ) | |
| | ) | |
| RUSSELL E. (RUSTY) BUCKLEW, | ) | |
| | ) | |
| JOHN WINFIELD, | ) | |
| | ) | |
| DENNIS J. SKILLICORN, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | No. 09-4095-CV-C-NKL |
| | ) | |
| GEORGE A. LOMBARDI, | ) | |
|     Director, Missouri | ) | |
|     Department of Corrections, | ) | |
|     in both his individual and | ) | |
|     his official capacities; | ) | |
| | ) | |
| STEVE LARKINS, | ) | |
|     Warden, Eastern Reception | ) | |
|     Diagnostic & Correctional | ) | |
|     Center, in both his individual | ) | |
|     and his official capacities; | ) | |
| | ) | |
| JOHN DOES 2-40, | ) | |
|     Anonymous Executioners, | ) | |
|     in both their individual | ) | |
|     and their official capacities, | ) | |
| | ) | |
| *Defendants*. | ) | |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

For their causes of action, the plaintiffs, by and through counsel, state and allege all as follows.

## Nature of the Action

1. This action is brought pursuant to 28 U.S.C. § 1331 for violations and threatened violations of the Federal Controlled Substances Act and the Federal Food, Drug & Cosmetic Act.

2. Plaintiffs are prisoners of the State of Missouri under sentence of death.

3. Plaintiffs seek equitable relief in the form of a declaratory judgment that defendants are violating or intend to violate these statutes.

4. Defendants carry out executions in Missouri by injecting sodium thiopental, pancuronium bromide, and potassium chloride.

5. Defendants are state actors.

6. Under the Supremacy Clause of the United States Constitution, the defendants are required to obey the Federal Controlled Substances Act, 21 U.S.C. §§ 801, et seq., and the Federal Food, Drug & Cosmetic Act., 21 U.S.C. §§ 301, et seq.

7. The Federal Controlled Substances Act lists schedules for controlled substances.

8. The Federal Controlled Substances Act says how and by whom controlled substances can be distributed.

9. Sodium thiopental is a controlled substance.

10. Defendants' means for obtaining the lethal injection chemicals does not comply with the Federal Controlled Substances Act.

11. The Federal Food, Drug & Cosmetic Act permits the distribution of certain drugs only when a licensed medical practitioner issues a prescription.

12. Sodium thiopental is a schedule III drug.

13. No licensed medical practitioner prescribes sodium thiopental to the defendants for use in lethal injections.

14. The Federal Food, Drug & Cosmetic Act requires approval of drugs for the purposes in which they are intended to be used.

15. Using sodium thiopental, pancuronium bromide, and potassium chloride in lethal injections has not been approved by the U.S. Food and Drug Administration (FDA).

16. Because the use of the foregoing chemicals for lethal injections has not been approved by the FDA, the defendants' use of these chemicals in lethal injections violates the Federal Food, Drug & Cosmetic Act.

17. Plaintiffs are not herein alleging that the defendants could never execute them by lethal injection.[1] Rather, they simply assert that any

---

[1] There are other pending and impending actions attacking the way this state performs lethal injections in other respects, but they are collateral to this action.

3

execution by lethal injection must comport with the Federal Controlled Substances Act and the Federal Food, Drug & Cosmetic Act.

18. Plaintiffs seek a declaratory judgment that the defendants' means for obtaining and administering the lethal injection chemicals violate the Federal Controlled Substances Act and the Federal Food, Drug & Cosmetic Act.

## Parties

19. Plaintiff **Earl Ringo, Jr.,** is a citizen of the United States and a resident of the State of Missouri.

20. Plaintiff Ringo is a person within the jurisdiction of the State of Missouri.

21. Plaintiff Ringo was sentenced to death in the Circuit Court of Boone County for two counts of first-degree murder.

22. The State of Missouri has filed, in the Missouri Supreme Court, a motion to set execution date against plaintiff Ringo.

23. Plaintiff **Dennis J. Skillicorn** is a citizen of the United States and a resident of the State of Missouri.

24. Plaintiff Skillicorn is a person within the jurisdiction of the State of Missouri.

4

25. Plaintiff Skillicorn was sentenced to death in the Circuit Court of Lafayette County (the Hon. Robert Ravenhill, then Circuit Judge) for a murder while acting together with Allan Nicklasson.

26. On July 25, 2008, the Missouri Supreme Court issued an execution warrant against plaintiff Skillicorn, on the basis of which he was scheduled to be executed by lethal injection at 12:01 a.m. on August 27, 2008. The Missouri Supreme Court stayed the execution on August 20, 2008.

27. On April 16, 2009, plaintiff Skillicorn, together with plaintiffs Middleton and Bucklew, filed an action under 42 U.S.C. § 1983, and their counsel notified the Missouri Supreme Court of their action.

28. On April 20, 2009, the Missouri Supreme Court set an execution date of May 20, 2009, against plaintiff Skillicorn.

29. Plaintiff **John Charles Middleton** is a citizen of the United States and a resident of the State of Missouri.

30. Plaintiff Middleton is a person within the jurisdiction of the State of Missouri.

31. Plaintiff Middleton was sentenced to death in the Circuit Court of Adair County for one homicide and in the Circuit Court of Callaway County for two additional homicides.

5

32. The Missouri Supreme Court has twice set execution dates against plaintiff Middleton, but has stayed them pending other litigation.

33. Plaintiff **Russell E. (Rusty) Bucklew** is a citizen of the United States and a resident of the State of Missouri.

34. Plaintiff Bucklew is a person within the jurisdiction of the State of Missouri.

35. Plaintiff Bucklew was sentenced to death in the Circuit Court of Boone County.

36. The Missouri Supreme Court has issued an order granting the State of Missouri's motion to set an execution date against him, which order says that it will do so "in due course."

37. Plaintiff **John Winfield** is a citizen of the United States and a resident of the State of Missouri.

38. Plaintiff Winfield is a person within the jurisdiction of the State of Missouri.

39. Plaintiff Winfield was sentenced to death, on two counts, in the Circuit Court of St. Louis County.

40. The State of Missouri has filed a motion, in the Missouri Supreme Court, to set an execution date against Mr. Winfield.

41. Defendant **George A. Lombardi** serves as Director of the Department of Corrections of the State of Missouri.

42. Defendant Lombardi's office is at 2729 Plaza Drive, Jefferson City, Cole County, Missouri 65109, in the Central Division of the Western Federal Judicial District of Missouri.

43. Defendant Lombardi is a resident of the Central Division of the Western Federal Judicial District of Missouri.

44. Defendant Lombardi is specifically authorized and directed by state statute to prescribe and direct the means by which the Department of Corrections carries out executions within the statutorily specified methods of lethal gas or lethal injection.[2] Plaintiffs do not in this complaint contend that lethal injection is per se unconstitutional.

45. Defendant Lombardi is sued in his individual and official capacities for the purpose of obtaining declaratory relief and such other relief as the Court finds the plaintiffs should receive.

46. At all times and in all respects referred to in this complaint, defendant Lombardi acted and will act under color of law.

47. Defendant **Steve Larkins** serves as Warden of the Eastern Reception Diagnostic & Correctional Center (ERDCC), in Bonne Terre, St. Francois County, Missouri.

48. ERDCC is where the State of Missouri began conducting its executions on April 27, 2005.

---

[2] Mo. Rev. Stat. § 546.720.

49. By virtue of his authority over the staff of ERDCC, defendant Larkins is responsible for the way in which executions are conducted in Missouri.

50. Defendant Larkins is sued in his individual and official capacities for the purpose of obtaining declaratory relief and such other relief as the Court finds the plaintiffs should receive.

51. At all times and in all respects referred to in this complaint, defendant Larkins acted and will act under color of law.

52. Defendants **John Does 2-40** are officials, officers, employees, agents, and servants of the State of Missouri who, by virtue of their employment or other status (including independent contractors and volunteers under the supervision of the defendants and their designees), participate in the planning of, purchasing and preparation for, carrying out of, and covering up of details about executions in the State of Missouri.

53. Plaintiffs cannot provide the Court the natural names of these individuals because the State of Missouri and its officials, officers, employees, etc. have thus far kept them secret with two exceptions, and after those exceptions the state legislature passed a bill to require that the remainder of the names be kept secret.[3]

---

[3]After the *St. Louis Post-Dispatch* published the name of one member of the team (John Doe 1), the Missouri General Assembly amended the

8

54. John Does 2-40 are sued in their individual and official capacities for the purpose of obtaining declaratory relief and such other relief as the Court finds the plaintiffs should receive.

55. On information and belief, defendants Does 2-40 reside in the Eastern and Western Federal Judicial Districts of Missouri.

56. At all times and in all respects referred to in this complaint, defendants Does 2-40 acted and will act under color of law.

57. Each and all of the foregoing defendants Lombardi, Larkins, and Does 2-40 at all times relevant to this complaint were acting or are intending to act in their official capacities with respect to all acts and omissions described in this complaint, and were in each instance acting or are intending to act under color of state law.

---

method-of-execution statute to forbid such disclosures, purporting to immunize them from discovery: "The identities of members of the execution team, as defined in the execution protocol of the department of corrections, shall be kept confidential. Notwithstanding any provision of law to the contrary, any portion of a record that could identify a person as being a current or former member of an execution team shall be privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for disclosure to any person or entity . . . ." Mo. Rev. Stat. § 546.270.2, as amended by MO. LAWS 2007, H.B. No. 820, § A. Subsection 3 continues: "A person may not, without the approval of the director of the department of corrections, knowingly disclose the identity of a current or former member of an execution team or disclose a record knowing that it could identify a person as being a current or former member of an execution team." The subsection goes on to provide for punitive damages for the disclosure of the names of "execution team" members.

58. Defendants and each of them intend to act in their respective official capacities and under color of state law to execute the plaintiffs by lethal injection in the manner set forth in this complaint.

## Jurisdiction

59. This Court has jurisdiction under 21 U.S.C. § 322 (enjoining violations of the Federal Food, Drug & Cosmetic Act); under 28 U.S.C. § 1331, in that it arises under the Constitution or laws of the United States; under 28 U.S.C. § 1651 (the All Writs Act); and under 28 U.S.C. § 2201(a), in that the purpose of this action is to secure declaratory relief.

## Venue

60. Venue is proper in this federal judicial district under 28 U.S.C. § 1391(b)(1)-(3) in that (1) the defendant Lombardi resides in its territorial jurisdiction; (2) the defendant Lombardi's decisions regarding the conduct of executions within the wide discretion created by Mo. Rev. Stat. § 546.270 are made in its territorial jurisdiction, and (3) all of the defendants the plaintiffs can identify reside in the same state.

## Exhaustion of Administrative Remedies

61. In this action the plaintiffs are not challenging prison conditions.

10

62. Exhaustion of administrative remedies is therefore not required.

63. Plaintiffs have nonetheless taken the steps that would have been sufficient to exhaust administrative remedies available to them if they had been required to do so to maintain this action.

64. Plaintiffs filed grievances with the Missouri Department of Corrections alleging with particularity that the Department plans to use chemicals to execute them and other persons within the jurisdiction of the United States in violation of the Federal Controlled Substances Act and the Federal Food, Drug and Cosmetic Act, and thereby also in violation of the Supremacy Clause of the United States Constitution.

65. Plaintiffs requested that the department comply with the foregoing federal statutes, including obtaining FDA approval for the use in executions of all chemicals to which either of both of these statutes apply, before proceeding with any more executions by lethal injection.

66. Plaintiffs received forms headed "Appeal Response" from the department dated on or about April 16, 2009, asserting that because its use of sodium thiopental, pancuronium bromide, and potassium chloride does not present a threat to public health and safety, the department's use of them does not violate the statutes.

## Factual Basis for Claim

67. Defendants are responsible for carrying out executions in the State of Missouri.

68. Defendants intend to execute the plaintiffs by injecting them with sodium thiopental, pancuronium bromide, and potassium chloride.

69. No doctor will be purchasing the lethal injection chemicals.

70. Either defendant Lombardi or defendant Larkins or defendants Doe 2-40, acting on the orders of defendant Lombardi or defendant Larkins, will purchase the lethal injection chemicals.

71. Neither defendant Lombardi nor defendant Larkins is a licensed physician.

72. Title 21 U.S.C. § 812, part of the Federal Controlled Substances Act, creates five schedules of controlled substances.

73. Under the foregoing statute, drugs are schedule I controlled substances if (a) the drug or other substance has a high potential for abuse, (b) the drug or other substance has no currently accepted medical use in treatment in the United States, and (c) there is a lack of accepted safety for use of the drug or other substance under medical supervision.

74. Under the foregoing statute, drugs are schedule II controlled substances if (a) the drug or substance has a high potential for abuse, (b) the drug or substance has a currently accepted medical use in the United

12

States or a currently accepted medical use with severe restrictions, and (c) abuse of the drug or other substances may lead to severe psychological or physical dependence.

75. Under the foregoing statute, drugs are schedule III controlled substances if (a) the drug or other substance has a potential for abuse less than the drugs or other substances in schedules I and II, (b) the drug or substance has a currently accepted medical use in the United States, and (c) abuse of the drug or other substance may lead to moderate or low physical dependence or high psychological dependence.

76. Under the foregoing statute, drugs are schedule IV controlled substances if (a) the drug or substance has a low potential for abuse relative to the drugs or other substances in schedule III, (b) the drug or other substance has a currently accepted medical use in treatment in the United States, and (c) abuse of the drug or other substance may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in schedule III.

77. Under the foregoing statute, drugs are schedule V controlled substances if (a) the drug or other substance has a low potential for abuse relative to the drugs or other substances in schedule IV, (b) the drug or other substance has a currently accepted medical use in treatment in the United States, and (c) abuse of the drug or other substance may lead to

13

limited physical dependence or psychological dependence relative to the drugs or other substances in schedule IV.

78. Sodium thiopental is a schedule III controlled substance.

79. Under 21 U.S.C. § 829, part of the Federal Controlled Substances Act, unless dispensed directly by a practitioner other than a pharmacist, schedule III controlled substances may be dispensed only upon a prescription by a practitioner licensed by law to administer such a drug.

80. Title 21 U.S.C. § 829 means that either a doctor medically licensed to administer sodium thiopental must administer the sodium thiopental to the plaintiffs, obtain the sodium thiopental, or issue a prescription for the use of the sodium thiopental.

81. A doctor medically licensed to administer sodium thiopental will not be administering sodium thiopental to the plaintiffs.

82. A doctor medically licensed to administer sodium thiopental will not be obtaining sodium thiopental for use as a lethal injection chemical.

83. A doctor medically licensed to administer sodium thiopental will not be prescribing sodium thiopental to the plaintiffs.

84. Under the Federal Food, Drug & Cosmetic Act, only a licensed medical practitioner can obtain and use drugs that require a prescription.

85. Pancuronium bromide is a regulated substance.

14
Case 2:09-cv-04095-NKL    Document 6    Filed 05/15/09    Page 14 of 19

86. No licensed medical practitioner will be obtaining or using pancuronium bromide or potassium chloride for the purpose of executing the plaintiffs.

87. Under the Federal Food, Drug & Cosmetic Act, before a drug can be used, the U.S. Food & Drug Administration (FDA) must authorize its use for the purpose for which a person intends to use it.

88. The FDA has not authorized the use of sodium thiopental, pancuronium bromide, and potassium chloride for lethal injections.

89. The United States Government could prosecute the defendants for violating the Controlled Substances Act and for violating the Federal Food, Drug & Cosmetic Act.[4]

90. In this action the plaintiffs are not seeking to force the Food and Drug Administration or any other United States governmental agency or official to enforce the Controlled Substances Act or the Federal Food, Drug & Cosmetic Act.

91. Because Plaintiffs are not seeking enforcement of the Controlled Substances Act or the Federal Food, Drug & Cosmetic Act, neither the Federal Administrative Procedures Act nor *Heckler v. Chaney*[5] apply to this action.

---

[4]*See Gonzales v. Raich*, 545 U.S. 1 (2005).

[5]470 U.S. 821 (1985).

15

92. Plaintiffs only seek a declaration that the defendants intended actions as applied to the plaintiffs will violate the Controlled Substances Act and the Federal Food, Drug & Cosmetic Act.

**Claims for Relief**

Count I: Violation of Controlled Substances Act

93. Plaintiffs restate and reallege the premises in paragraphs 1-92.

94. Defendants intend to extinguish the plaintiffs' lives by injecting them with sodium thiopental even though the thiopental will neither be injected by a doctor licensed to administer thiopental nor as a result of a prescription by a doctor licensed to administer thiopental.

95. Because a doctor medically licensed to administer sodium thiopental will neither being administering nor prescribing sodium thiopental to Plaintiffs, injecting sodium thiopental into the plaintiffs will violate the Federal Controlled Substances Act.

Count II: Administering Chemicals Without a Prescription

96. Plaintiffs restate and reallege the premises in paragraphs 1-95.

97. Defendants intend to extinguish the plaintiffs' lives by injecting them with pancuronium bromide and potassium chloride despite the fact that the drugs will be obtained without a prescription from a licensed medical practitioner.

16

98. Defendants' intended actions as set forth in this Count II violate the Federal Controlled Substances Act.

Count III: Administering Drugs for Purpose Not Approved by FDA

99. Plaintiffs restate and reallege the premises in paragraphs 1-98.

100. Defendants intend to extinguish the plaintiffs' lives by injecting them with drugs that have not been approved by the FDA for the purpose of lethal injection.

101. Defendants' intended actions as set forth in this Count III violate the Federal Food, Drug & Cosmetic Act.

102. Plaintiffs are not seeking enforcement by the FDA but rather declaratory relief by this Court.[6]

**Prayer for Relief**

103. Plaintiffs request a declaratory judgment that carrying out a lethal injection using sodium thiopental when the thiopental is neither administered by a doctor licensed to administer it nor prescribed by a doctor licensed to do so violates the Federal Controlled Substances Act.

104. Plaintiffs request a declaratory judgment that carrying out a lethal injection with chemicals obtained without a prescription from a

---

[6]*Cf. Heckler v. Chaney*, 470 U.S. 821 (1985).

licensed medical practitioner violates the Federal Controlled Substances Act.

105.  Plaintiffs request a declaratory judgment that carrying out a lethal injection with chemicals that have not been approved by the FDA for use in lethal injections violates the Federal Food, Drug & Cosmetic Act.

106. Plaintiffs seek this Court's order granting them reasonable attorney fees as well as the costs of suit, and such further relief as this Court deems just and proper.

Respectfully submitted,

JENNIFER A. MERRIGAN
Public Interest Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri 64113
  (816) 363-2795
  FAX (816) 363-2799
  *jmerrigan@pilc.org*

*Counsel for Plaintiff Skillicorn
    and Winfield*

s/John William Simon
JOHN WILLIAM SIMON
    J.D., P<small>H</small>.D.
Constitutional Advocacy, LLC
2683 South Big Bend Blvd., Suite 12
St. Louis, Missouri 63143-2100
  (314) 604-6982
  FAX (314) 754-2605
  *simonjw1@yahoo.com*

*Counsel for Plaintiffs Skillicorn,
    Middleton, and Bucklew*

JOSEPH W. LUBY
Public Interest Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri 64113
  (816) 363-2795
  FAX (816) 363-2799
  *jluby@pilc.org*

*Counsel for Plaintiff Winfield
    and Skillicorn*

CHERYL A. PILATE
REBECCA L. KURZ
Morgan Pilate LLC
142 North Cherry Street
Olathe, Kansas 66061
  (913) 829-6336
  FAX (913) 829-6446
  *cpilate@morganpilate.com*
  *rkurz@morganpilate.com*

*Counsel for Plaintiffs Ringo,
    Middleton, and Bucklew*