IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

EARL RINGO, JR., et al.  )
    Plaintiffs,  )
                                                 )
v.  )    No. 09-CV-4095NKL
                                                 )    (CAPITAL CASE)
                                                 )    (Plaintiff Skillicorn scheduled for
GEORRGE .A LOMBARDI , et al.,  )    execution on May 20, 2009)
    Respondents.  )

**MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED
UNDER FED. R. CIV. P. 12(b)(6) AND SUGGESTIONS IN OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

**Claims and Asserted Relief and Requested**

    1. Plaintiffs Ringo, Middleton, Bucklew, Winfield, and Skillicorn are Missouri inmates under sentences of death. The Missouri Supreme Court has issued a warrant for Skillicorn's execution to be carried out on May 20, 2009.

    2. Plaintiffs filed a petition for declaratory on May 15, 2009, asserting three claims. Claim 1 asserts that it is a violation of the Federal Controlled Substances Act for Missouri to use sodium thiopental in an execution by lethal injection because the chemical will not be both prescribed and administered by "a doctor licensed to administer thiopental" (Petition at 16). Claim 2 alleges that it is a violation of the Federal Controlled Substances Act for Missouri to use pancuronium bromide and potassium chloride in an execution by lethal injection because "the drugs will be obtained without a prescription from a licensed medical

1

practioner"(Petition at 16-17). Claim 3 asserts that it is a violation of the Federal Food, Drug and Cosmetic Act for Missouri to use these three chemicals in an execution by lethal injection "because the chemicals have not been approved by the FDA for the purpose of lethal injection"(Petition at 17).

3. Plaintiffs request declarations that the use of thiopental by Missouri in an execution by lethal injection would violate the Federal Controlled Substances Act unless the chemical is prescribed and administered by a licensed doctor, that the use of any of the three chemicals in an execution by lethal injection without a prescription would violate the Federal Controlled Substances Act, and that the use of any of the chemicals in an execution by lethal injection would violate the Federal Food Drug and Cosmetic Act because the FDA has not approved the chemicals for use in lethal injections (Petition at 17-18).

## Standard of Review

4. In order to survive a motion to dismiss a pleading the must set out "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct.1955, 1974(2007). A court deciding such a motion, while it should not dismiss based on mere disbelief of factual allegations, is not bound to accept a plaintiff's legal conclusions, even if these are couched as factual allegations. *Id.* at 1965. In this case, if one take's the plaintiffs' factual allegations as true, all the claims for relief still fail as a matter of law. Therefore the petition should be dismissed, for failure to a state a claim on which relief can be granted.

2

## Analysis

5. Plaintiffs' claims must fail as a matter of law. The "basic underpinning" in any analysis of whether a federal statute preempts a state statute or regulation is analysis of whether the state regulation or statute is an obstacle to the accomplishment of the purpose Congress intended the federal statute to serve. *Delaware v. Deputy,* 664 A.2d 411, 418 ( Del. Super. Ct. 1994) *affirmed* 648 A.2d 423 (Del.1994) *citng and quoting Louisiana Public Service Commission v. F.C.C.*, 476 U.S. 355, 374 (1986). In conducting preemption analysis "consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Delaware v. Deputy*, 664 A.2d at 418 *quoting Maryland v. Louisiana*, 451 U.S. 725, 746-747(1981). The use of thiopental, pancuronium bromide, and potassium chloride in executions by lethal injection conducted by the several states and the Federal Government does not impede or even having anything to do with the purposes of the Controlled Substances Act, or the Food, Drug and Cosmetics Act. Therefore as a matter of law Missouri's use of those chemicals in executions by lethal injection does not and cannot violate the Controlled Substances Act or the Food, Drug and Cosmetics Act.

6. The principal purpose of the Controlled Substances Act is to deal in a comprehensive manner with drug abuse by preventing abuse, rehabilitating offenders, controlling the use of drugs by individuals, and providing criminal penalties, in order to prevent the illicit abuse of drugs by individuals and the resulting societal problems. *See Delaware v. Deputy*, 644 A.2d at 418-419 *citing* H.R.Rep. No. 91-1444 91st Cong., 2nd Sess.

at 3 (1971), and *U.S. v. Rosenberg*, 515 F. 2d 190, 193 (9th Cir 1975). The use of chemicals by the several states and the Federal Government in carrying out executions by lethal injection in no way promotes the societal problems of illicit drug abuse and addiction that the Controlled Substances Act or other laws criminalizing illegal drug use are meant to prevent. Therefore, the challenged use of chemicals in carrying out lethal injections, whether or not obtained, prescribed, and administered by a physician, does not violate the Federal Controlled Substances Act.

      7. The purposes of the Food Drug and Cosmetic Act are to prohibit the movement in interstate commerce of adulterated or misbranded food, drugs, devices and cosmetics and to protect public health. *Delaware v. Deputy*, 644 A.2d at 419 *quoting U.S. v. 1851 Cartons, Etc.*, 146 F.2d 760,761 (1945) and *U.S. v. Kordel*, 164 F.2d 913, 917(1947) *aff'd* 335 U.S. 345 (1948). In *Heckler v. Chaney*, 470 U.S. 821 (1985) the United States Supreme Court rejected the idea that Texas death row inmates could compel the FDA to enforce the Food, Drug and Cosmetics in accord with the inmates' view that lethal injection violated the Act. The Court rejected the claim because enforcement of the Act is matter of administrative discretion. But the statement of the FDA Commissioner, quoted in the opinion, on when the Act is enforced is informative about the intent of the Act. The Commissioner stated that the Act is generally only enforced when there is a blatant scheme to defraud or a serious danger to public health and that those dangers are not present under state lethal injection laws. *Id*. at 825-826. That enforcement policy is entirely consistent with, and reinforces the teaching of

*Delaware v. Deputy*, and the cases it cites about the purpose of the Act. The use of the challenged chemicals in executions by lethal injection does not violate the Food, Drug and Cosmetic Act.

8. After 10 p.m. on Saturday May16, 2009, plaintiff Skillicorn filed a motion for preliminary injunction that runs to twenty-six pages, counting the signature block and certificate of service. The motion however says nothing or virtually nothing about the merits of the underlying suit. The application for injunction should be denied not only because plaintiffs have no realistic chance of prevailing on the merits of the underlying suit, but also because this exactly the type of last minute piecemeal litigation that creates a strong presumption against granting a stay. In *Hill v. McDonough*, 547 U.S. 573 584-585(2006) the United States Supreme Court stated that there is a strong equitable presumption against the grant of a stay where a suit could have been brought at such a time as to allow consideration of the merits without the entry of a stay, and that the last minute nature of an application for stay, or an attempt at manipulation of the judicial process may be grounds to deny a stay. The complaint was filed late on the afternoon of the third to the last business day before the scheduled execution. There is no good reason it could not have been filed last month or last year, rather than as part of a flurry of last minute litigation. One may draw the reasonable inference that Skillicorn would have presented the suit long before now if he viewed it as one of his stronger avenues to obtain relief, or even if he viewed it as having a reasonable chance

of success. The application for injunction, should, under *Hill*, be subject to a strong presumption supporting denial, and should be denied.

WHEREFORE, because plaintiffs fail to state a claim on which relief can be granted, defendants pray that the case be dismissed under Rule 12(b)(6), and pray that the application from plaintiff Skillicorn for an injunction based on this suit be denied.

Respectfully submitted,

**CHRIS A. KOSTER**
Attorney General

/s/Michael J. Spillane
MICHAEL J. SPILLANE
Assistant Attorney General
Missouri Bar No. 40704

P. O. Box 899
Jefferson City, MO 65102
(573) 751-1307
(573) 751-3825 FAX
mike.spillane@ago.mo.gov
Attorneys for Respondent

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct
copy of the foregoing was electronically
filed by using the CM/ECF system.
Participants in the case are CM/ECF
users and should be notified by the CM/ECF system,
this 16th day of May, 2009, to:

Jennifer Merrigan
Public Interest Litigation Clinic
305 East 63rd Street
Kansas City, MO 64113

John William Simon
Constitutional Advocacy, LLC
2683 South Big Bend Blvd Ste. 12
St. Louis, MO 63143-2100

Cheryl Ann Pilate
Rebecca L. Kurz
Morgan Pilate LLC
142 N. Cherry
Olathe, KS 66061

Joseph W. Luby
Public Interest Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri 64113

/s/Michael J. Spillane
_____
**MICHAEL J. SPILLANE**