IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| EARL RINGO, JR., et al., | ) |
| *Plaintiffs*, | ) **THIS IS A CAPITAL CASE.** |
| v. | ) Execution scheduled 20 May 2009 |
| GEORGE A. LOMBARDI et al., | ) No. 09-4095-CV-C-NKL |
| *Defendants*. | ) |

**RESPONSE TO MOTION TO DISMISS
COMPLAINT FOR DECLARATORY JUDGMENT
AGAINST ADMITTED FAILURE TO ABIDE BY FEDERAL LAW**

Defendants have failed to show why the complaint fails to state a claim on which relief can be granted, because they simply deny that the words of the statute do not apply to their conduct, when a substantial part of the office of a declaratory judgment action is to resolve such disputes. Another capital jurisdiction, the State of Utah, has amended its controlled substances regulation to provide its corrections personnel the authority Congress has yet to provide these defendants. That they are reduced to what amounts to a "policy" argument indicates that the plaintiffs' point has struck home. Their motion must be denied.

# Table of Contents

Cover ............................................................................................................. i

Table of Contents ......................................................................................... ii

Table of Authorities .................................................................................... iii

Reasons for Denying the Motion to Dismiss ................................................ 1

    I.    Defendants fail to meet the burden of a party seeking to have a federal civil action dismissed for failure to state a claim on which relief can be granted, but instead make statutory construction arguments illustrating the appropriateness of the pending proceeding. ............................... 1

    II.   Defendants' argument that a separate pleading should be denied as an application for "stay" is irrelevant to the question whether the complaint states a claim on which relief can be granted. ........................................................................ 9

Conclusion ................................................................................................. 11

Certificate of Service ................................................................................. 11

# Table of Authorities

## Constitutional Provisions

U.S. Const. amend. I ................................................................................................ 3

## Statutes

21 U.S.C. § 822 ........................................................................................................ 7

21 U.S.C. § 823 ................................................................................................ 5, 7, 8

28 U.S.C. § 1651 ...................................................................................................... 9

## Court Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1

Fed. R. Civ. P. 8(a) .................................................................................................. 1

## Judicial Decisions

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 1

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984) .................................................................................................................. 3

*Chisom v. Roemer*, 501 U.S. 380 (1991) ................................................................. 3

*Conley v. Gibson*, 355 U.S. 41 (1957) ..................................................................... 1

*Erickson v. Pardus*, 551 U.S. 89, ---, 127 S.Ct. 2197 (2007) (per curiam), ........... 1

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................................. 4

*Neitzke v. Williams*, 490 U.S. 319 (1989) ................................................................ 1

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ................................................................. 1

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ................................................ 1

## Other Authorities

21 C.F.R. 1301 .......................................................................................................... 8

A. Scalia, *Judicial Deference to Administrative Interpretations of Law*, 1989 DUKE L.J. 511 (1989) .................................................................................. 3

State of Utah, Rule R156-37. Utah Controlled Substances Act Rules, available at http://www.rules.utah.gov/publicat/code/r156/r156-37.htm#T5, accessed May 17, 2009, by John William Simon, and available by him on request in PDF or hard copy .................................. 7

# Reasons for Denying the Motion to Dismiss

**I. Defendants fail to meet the burden of a party seeking to have a federal civil action dismissed for failure to state a claim on which relief can be granted, but instead make statutory construction arguments illustrating the appropriateness of the pending proceeding.**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" [1]. A motion to dismiss under Rule 12(b)(6) is not the occasion to dispute facts: "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."[2]

Defendants do not deny that they have failed to abide by the statutes. Defendants have not denied that the statutes categorically restrict the use of the substances they admittedly use or plan to use. Instead, the defendants hold out their discrete acts of procuring chemicals for the

---

[1] *Erickson v. Pardus*, 551 U.S. 89, ---, 127 S.Ct. 2197, 2199 (2007) (per curiam), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

[2] *Id.*, 127 S.Ct. at 2200, citing *Twombly*, 550 U.S. at 555-56, citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

purpose of executions as a "statute or regulation." (Doc. No. 8 at 3.) It is as if one of them were parking in a "no parking" area on federal property, and asserted that some version of the doctrine of preemption gave them leave to do so. The assertion would not avail them if they held it up to avoid paying a parking ticket, and it will not avail them here. There is no question of "states rights" involved in this case, and no occasion for the Court to engage in "preemption analysis"—only a question of whether individuals are above the law because they work for the state, and an execution might be delayed if they have to answer to a federal court *in any way* for what they have done.

Defendants seek to evade the plain meaning of the statutes they are violating. They argue that these statutes were not originally intended to cover lethal injection. (Doc. No. 8 at 3-4.)

That is not the way statutes are construed in our legal system. No less an authority than JUSTICE SCALIA has explained the way courts normally approach questions of statutory construction:

> first, find the ordinary meaning of the language in its textual context; and second, using established canons of construction, ask whether there is any clear indication that some permissible meaning other than the ordinary one applies. If not—and

2

especially if a good reason for the ordinary meaning appears plain—we apply that ordinary meaning.[3]

It is not the role of a court to render its expectation about what the legislature must have meant, but rather to look at the words of the statute itself.[4] It does not follow from the fact that words appear in a statute that the legislative branch thought about all their future applications; but that does not give the judiciary license to white them out, as the defendants would have this Court do in this case.[5]

Only when there is an ambiguity in a statute does one attempt to plumb the intent of the lawgiver. If a statute says that no one can make apple pies without cinnamon, it does not matter that the original purpose was to protect the cinnamon industry, and it has since been replaced by Replicator technology, as on STAR TREK. If one wishes to make an apple pie without cinnamon without violating the law, one exercises one's First Amendment rights and brings about a change in the statute. Defendants are literate citizens who can write their Members of Congress to bring about changes in these statutes if they find them inconvenient. It is not the

---

[3]*Chisom v. Roemer*, 501 U.S. 380, 404 (1991) (Scalia, J., dissenting). See, generally *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

[4]501 U.S. at 405.

[5]*See* A. Scalia, *Judicial Deference to Administrative Interpretations of Law*, 1989 DUKE L.J. 511,517 (1989).

3

province of the courts to waive the defendants' duty to obey statutes when the words plainly cover what they intend to do, as if Congress had written them on an Etch-A-Sketch tablet that the courts held in their hands.

Thus, the defendants' discussion of the "purpose" of the statutes they are violating is beside the point. The question is not what Congress had in mind when it adopted the statutes, but what the words of the statutes say. Given the defendants' admissions by silence, the plaintiffs are entitled to relief. They have certainly pleaded a claim on which relief can be granted.

Congress adopted both of these statutes before any American jurisdiction—or any other jurisdiction, as far as counsel's research discloses—had introduced lethal injection as a method of execution. When Oklahoma and Texas chose to medicalize executions as a means of making the death penalty more palatable, they should have foreseen that they would have to abide by the laws applying to the substances they chose to use.

Defendants' citation of *Heckler v. Chaney*[6] is of no avail to them. *Heckler* held that private parties may not compel the Food & Drug Administration to enforce one of these statutes. It did not hold that the statute did not apply to the drugs involved in this case—or that one. Plaintiffs were obviously aware of *Heckler*, because they cite it twice in the

---

[6] 470 U.S. 821 (1985).

complaint (Doc. No. 6 at 15 & 17), thereby making the Court and the defendants aware of it. Because an action for declaratory judgment does not force the FDA to engage in enforcement efforts beyond those it choose to engage in within its discretion, *Heckler* is neither here not there. Only a pleader with guilty clients would quote language from a third party in an opinion in another case about another question as establishing that a statute means something other than what it says.

Indeed, the fact of *Heckler* put the death-penalty states on notice that there was a problem with their using the three chemicals Oklahoma chose and other states and the federal government aped. Not all such states have been oblivious to this situation.

The State of Utah has a state regulatory scheme for controlled substances that works together with the federal scheme, referring to the schedules of controlled substances identified in the complaint (Doc. No. 6 at 12-14), and listing the categories persons who may receive a "controlled substance license to manufacture, produce, distribute, dispense, prescribe, obtain, administer, analyze, or conduct research with controlled substances in Schedules I, II, III, IV, or V." These specify categories of health-care providers who could also be registered under 21 U.S.C. § 823.

Utah is a death-penalty state, and uses lethal injection. In subdivision (1) of its state regulation R156-37-301 (License Classifications—

5

Restrictions), it has amended its authoritative norms to include, along with health-care providers, its prison establishment, for the purpose of administering lethal injection:

>   (1) Consistent with the provisions of law, the division may issue a controlled substance license to manufacture, produce, distribute, dispense, prescribe, obtain, administer, analyze, or conduct research with controlled substances in Schedules I, II, III, IV, or V to qualified persons.  Licenses shall be issued to qualified persons in the following categories:
>
>   (a) pharmacist;
>   (b) optometrist;
>   (c) podiatric physician;
>   (d) dentist;
>   (e) osteopathic physician and surgeon;
>   (f) physician and surgeon;
>   (g) physician assistant;
>   (h) veterinarian;
>   (*i*) advanced practice registered nurse;
>   (j) certified nurse midwife;
>   (k) certified registered nurse anesthetist;
>   (*l*) Class A pharmacy-retail operations located in Utah;
>   (m) Class B pharmacy located in Utah providing services to a target population unique to the needs of the healthcare services required by the patient, including:
>   (i) closed door;
>   (ii) hospital clinic pharmacy;
>   (iii) methadone clinics;
>   (iv) nuclear;
>   (v) branch;
>   (vi) hospice facility pharmacy;
>   (vii) veterinarian pharmaceutical facility;
>   (viii) pharmaceutical administration facility; and
>   (ix) sterile product preparation facility.
>   (n) Class C pharmacy located in Utah engaged in:
>   (i) manufacturing;
>   (ii) producing;

(iii)  wholesaling; and
          (iv)  distributing.
     (o) Class D Out-of-state mail order pharmacies.
     (p) Class E pharmacy including:
          (i)   medical gases providers; and
          (ii)  analytical laboratories.
     (q) ***Utah Department of Corrections for the conduct of execution by the administration of lethal injection under its statutory authority and in accordance with its policies and procedures***.[7]

This Utah state regulation shows what section 823 would have to look like in order for the defendants to be eligible to use controlled substances. It has not been amended, as Utah's analogous norm has been.

It is not as if the federal government did not have occasion to make exemptions that would be parallel to Utah's administrative action. Title 21 U.S.C. § 822 provides that "every person who dispenses . . . a controlled substance," except for the listed exceptions (employees or agents of registered persons, common or contract carriers whose possession is in the usual course of business, and ultimate users)[8] must obtain a registration

---

[7]State of Utah, Rule R156-37. Utah Controlled Substances Act Rules, available at http://www.rules.utah.gov/publicat/code/r156/r156-37.htm#T5, accessed May 17, 2009, by John William Simon, and available by him on request in PDF or hard copy (emphasis supplied).

[8]21 U.S.C. § 802(27) defines "ultimate user" as "a person who has lawfully obtained, and who possesses, a controlled substance for his own use or for the use of a member of his household or for an animal owned by him or by a member of his household." Plaintiffs suggest that this, too, might have been a place where Congress might have added "or for the purpose of executing a prisoner by means of lethal injection," but didn't. "Ultimate user" is a term of art, and cannot be morphed into an escape hatch for the defendants.

7

from the Attorney General, unless the Attorney General determines that the registration would be against the public interest (section 823). In 21 C.F.R. 1301, the Code of Federal Regulations gives a more comprehensive list of exemptions to the registration requirements. These exemptions include:

- Employees of registered persons (1301.22(a))
- Practitioners who are agents/employees of registered practitioners (1301.22(b))
- Practitioners who are agents/employees of registered hospitals or other institutions (1301.22(c) (with several conditions)
- Any official of the Army, Navy, Marine Corps, Air Force, Coast Guard, Public Health Service, or Bureau of Prisons who is authorized to prescribe/dispense/administer, but not to procure or purchase controlled substances (1301.23(a) (where these officials must still comply with section 1306, which lays out the rules for prescriptions (meaning they must still be an authorized practitioner)
- Any of the same officials who are authorized to import/export controlled substances (1301.23(b) (with part (c) of 1301.23 states that these officials, when acting in their private capacity, must register)
- Any officer of the Administration, U.S. Customs Service, FDA, or any Federal officer lawfully engaged in the enforcement of regulations of controlled substances who is authorized to possess the substances in the course of duties (1301.24(a)(1))
- Any state or local officer engaged in enforcing state or local regulations of controlled substances (1301.24(a)(2))
- Practitioners who prescribe/dispense schedule III, IV, V narcotics for detox treatment may be exempt from

8

> obtaining a separate registration (per 1301.13(e)) so long as they meet certain conditions (1301.28(a)(1-3))

Conspicuously absent from the federal regulatory list of exempted categories are state corrections officials, officers, or employees engaged in the practice of lethal injection.

**II. Defendants' argument that a separate pleading should be denied as an application for "stay" is irrelevant to the question whether the complaint states a claim on which relief can be granted.**

Defendants devote a good deal of their motion to dismiss to disparaging one plaintiff's motion under the All Writs Act[9] to prevent the defendants from "winning" this case as to him by killing him first. (Doc. No. 8 at 4-5.) The Court has set a hearing on the All Writs Act motion for noon tomorrow. Plaintiff Skillicorn will address the defendants' arguments at that time.

They have nothing to do with the complaint or with the entitlement of the plaintiffs generally to the relief they seek. On the latter question, the defendants are left with the argument that the words of the statute don't count. Whether one plaintiff viewed this claim as one of his stronger claims or one of his weaker claims is irrelevant to the meaning of the federal statutes in play or the sufficiency of the complaint.

---

[9] 28 U.S.C. § 1651.

## Conclusion

WHEREFORE, the plaintiffs pray the Court for its order as aforesaid.

Respectfully submitted,

JENNIFER A. MERRIGAN
Public Interest Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri  64113
 (816) 363-2795
 FAX (816) 363-2799
 *jmerrigan@pilc.org*

*Counsel for Plaintiff Skillicorn
 and Winfield*

s/John William Simon
JOHN WILLIAM SIMON
  J.D., PH.D.
Constitutional Advocacy, LLC
2683 South Big Bend Blvd., Suite 12
St. Louis, Missouri  63143-2100
 (314) 604-6982
 FAX  (314) 754-2605
 *simonjw1@yahoo.com*

*Counsel for Plaintiffs Skillicorn,
 Bucklew, and Middleton*

JOSEPH W. LUBY
Public Interest Litigation Clinic
6155 Oak Street, Suite C
Kansas City, Missouri  64113
 (816) 363-2795
 FAX (816) 363-2799
 *jluby@pilc.org*

*Counsel for Plaintiff Winfield
 and Skillicorn*

CHERYL A. PILATE
REBECCA L. KURZ
Morgan Pilate LLC
142 North Cherry Street
Olathe, Kansas  66061
 (913) 829-6336
 FAX  (913) 829-6446
 *cpilate@morganpilate.com*
 *rkurz@morganpilate.com*

*Counsel for Plaintiffs Bucklew,
 Middleton, and Ringo*

## Certificate of Service

I hereby certify a true and correct copy of the foregoing was forwarded for transmission via Electronic Case Filing (ECF) this 18th day of May 2009, to the offices of Stephen David Hawke, Michael Joseph Spillane, and Andrew W. Hassell, Assistant State Attorneys General, P.O. Box 899, Jefferson City, Missouri 65102.

s/John William Simon
*Attorney for Plaintiffs*

11