## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

EARL RINGO, et al.,       )
                        )
        Petitioners,   )
                        )
    v.               )   Case no. 09-4095-CV-C-NKL
                        )
GEORGE A. LOMBARDI, et al.,  )
                        )
        Respondents.  )

## Respondents' Amended Motion To Dismiss[1]

The plaintiffs in this case are Missouri inmates sentenced to death. They contend that the State of Missouri violates the federal Controlled Substances Act (CSA), 21 U.S.C. §801 *et seq.*, by not lawfully obtaining the chemicals that the State uses in lethal injections. Doc. 17 at 2. They also allege that the State of Missouri violates the federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §301 *et seq.*, because the chemicals used in a lethal injection, sodium thiopental, pancuromium bromide, and potassium chloride, are not prescribed by a

---

[1] This case began as a last-minute challenge to the execution of Dennis Skillicorn. Respondents filed a motion to dismiss at that time. Doc. 8. This motion is intended to replace the motion filed as Doc. 8.

physician or approved by the Food and Drug Administration (FDA) as "safe" for use in lethal injections. *Id.*

This Court should dismiss this case for a lack of subject-matter jurisdiction because petitioners do not have standing because they cannot receive effective relief. Fed.R.Civ.Pro. 12(b)(1). Alternatively, this Court should dismiss the petition for failure to state a claim upon which relief may be granted, Fed.R.Civ.Pro. 12(b)(6), for three reasons: first, petitioners are barred from raising these claims due to *res judicata*; second, because they lack a viable cause of action; and third, because petitioners cannot succeed on their claim under the pleaded facts.

## I.    Petitioners lack standing

In order to have standing, petitioners must show, among other things, that "the injury must be redressable by a favorable decision." *Jewell v. United States*, 548 F.3d 1168, 1172 (8th Cir. 2008). Petitioners cannot satisfy this test.

Petitioners fail to show, however, that they can receive any effective relief even if this Court finds in their favor. Effective relief in this case would mean that this Court could prohibit the Missouri

Department of Corrections from purchasing the chemicals for lethal injections or carrying out executions by lethal injection. Such relief is unavailable.

This Court cannot order the Attorney General to prosecute employees of the Missouri Department of Corrections because the decision about whether to prosecute, and what charges to bring, are in the Attorney General's sole discretion as a prosecutor. *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978). Thus, petitioners "could not compel the State to enforce it against [the Missouri Department of Corrections] because 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'" *Diamond v. Charles*, 476 U.S. 54, 64 (1986), *quoting Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973). Likewise, the Food and Drug Administration has complete discretion about what uses of drugs it chooses to review. *Heckler v. Chaney*, 470 U.S. 821, 835 (1985). Thus, this Court could not order the FDA to investigate the use of any drugs in lethal injections.

This Court also could not directly enforce a judgment favorable to petitioners. This Court would have two options to enforce its judgment: contempt and injunction. Contempt here would be a back-door way to

require the Missouri Department of Corrections to comply with the CSA and the FDCA. In doing so, this Court would be enforcing a criminal law that the Executive Branch has chosen not to enforce. That result would violate the separation of powers because only the Executive Branch has the power and the discretion to bring criminal charges and to punish lawbreakers, 434 U.S. at 364.

This Court also could not proceed via injunction. An injunction, like other equitable forms of relief, "generally will not enjoin the commission of a crime" *United States v. Santee Sioux Tribe of Nebraska*, 135 F.3d 558, 565 (8th Cir. 1998). "This general rule has three exceptions under which an injunction will issue: 1) in cases of national emergency; 2) in cases of widespread public nuisance; and 3) in cases where a statute grants a court the power to enjoin a crime." *Id*. None of those exceptions apply here. Thus, this Court could not issue an injunction to force the Missouri Department of Corrections to comply with the CSA and the FDCA.

Therefore, even if petitioners were entitled to the declaratory judgment that they seek, they cannot receive any meaningful relief

4

from this Court or any other court.[2] Petitioners therefore lack standing and this Court lacks subject-matter jurisdiction. *Jewell*, 548 F.3d at 1172. This Court should dismiss this case under Rule 12(b)(1).

## II. *Res judicata* bars petitioners' claims

*Res judicata*, also known as claim preclusion, "applies when there is a prior judgment rendered by a court of competent jurisdiction, that prior judgment was final and on the merits, and it involved the same cause of action and the same parties or privies." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 669 (8th Cir. 2006). *Res judicata* also bars claims "that were or could have been litigated in the earlier proceeding."

The first requirement is a prior judgment entered by as court of competent jurisdiction. Judge Gaitan of this Court recently denied other claims challenging Missouri's method of lethal injection. *Clemons v. Crawford*, no. 07-4129-CV-C-FJG (W.D.Mo., judgment entered July 15, 2008), *appeal pending*, no. 08-2895 (8th Cir.). Resp. Ex. A and B. That decision was on the merits of the claims presented. Resp. Ex. A. It was also final because it resolved the case on the merits and left nothing for

[2] Petitioners seem to recognize this fact by not asking for any relief other than a declaratory judgment.

the district court to do except execute the judgment. *Dieser v. Continental Cas. Co.*, 440 F.3d 920, 923 (8th Cir. 2006); *Cunningham v. Hamilton County,* 527 U.S. 198, 204 (1999).

The Eighth Circuit has held that the meaning of the phrase 'the same claims or causes of action' means "claims that arise out of the same nucleus of operative facts." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 732 (8th Cir. 2004). The issue in *Clemons* was whether the Missouri Department of Corrections had failed to properly train the persons who carry out executions by lethal injection. *Clemons*, Doc. 89 at 1. The issue in this case is whether the Missouri Department of Corrections is able to legally obtain and administer the chemicals used in an execution by lethal injection. Doc. 6 at ¶18.

Both the claim in *Clemons* and the claim here arise out of the same facts. The most important common fact is that both actions challenge the administration of lethal chemicals during an execution. The manner in which the Missouri Department of Corrections obtains and administers the chemicals and the training of the persons who administer the chemicals are both part of one discreet act: a legal execution of an inmate convicted of first-degree murder and sentenced

6

to death. As such, the facts at issue in this case arise from the same facts at issue in *Clemons*.

Finally, the petitioners here are in privity with the petitioners in *Clemons*. Privity is defined simply as "mutuality of interest." *Black's Law Dictionary* 1199 (6th ed. 1990). All of the petitioners in *Clemons* were Missouri inmates sentenced to death, just as like petitioners here. *Clemons* was not a suit specific to one inmate. It was a global challenge to Missouri's policies and procedures for executing all inmates. All of the inmates here and in *Clemons* have the same interest and the same goal: forestalling their executions and demonstrating that Missouri cannot execute them. Thus, the *Clemons* petitioners were and are in privity with the petitioners here.

Petitioners Ringo, Bucklew, and Middleton demonstrated that privity exists by attempting to intervene in *Clemons*. *Clemons*, Doc. 76 (Middleton); Doc. 78 (Bucklew); Doc. 81 (Ringo). Their motions to intervene did not assert that the existing plaintiffs did not adequately represent them. To the contrary, they argued that

> By virtue of their common stake in a positive outcome, [petitioners'] interests are bound up with those of the persons already permitted to proceed as plaintiffs or intervenors in this action. [Petitioners would] fil[e] joint

papers and engag[e] in joint discovery. [Petitioners] would furthermore adopt by reference the complaint and other dispositive pleadings filed thus far by the original plaintiffs and the four previous intervenors.

Doc. 76 at ¶18; Doc. 78 at ¶17; Doc. 81 at ¶13. Petitioners' own pleadings demonstrate the *Clemons* plaintiffs adequately represented their rights. Further, petitioners were adamant about why they filed the motions to intervene: to ensure that the Missouri Supreme Court did not set execution dates for them. Doc. 76 at ¶14; Doc. 78 at ¶13; Doc. 81 at ¶10.

The purpose of the doctrine of *res judicata* is to "protect defendants 'from the expense and vexation attending multiple lawsuits,' to 'conserve[ ] judicial resources,' and to 'foster [ ] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *United States v. Gurley*, 43 F.3d 1188, 1197 (8th Cir. 1994), *quoting Montana v. United States*, 440 U.S. 147, 153-154 (1979). This case demonstrates the wisdom of that doctrine. The Missouri Department of Corrections and the State of Missouri are entitled a determination that their execution process complies with federal law and the federal Constitution. The State should not be forced to litigate each discreet aspect of the execution process separately. Doing so in multiple actions involving

8

multiple inmates is an inefficient use of this Court's (and the State's) resources. Further, when the State resumes executions, many actions challenging the manner in which the State conducts lethal injection will be dealt with on an emergency basis, preempting other cases on the Court's docket and taking up even more of the Court's time. This Court should hold that *res judicata* bars any further challenges to Missouri's method of lethal injection. Thus, petitioners fails to state a claim upon which relief may be granted. Fed.R.Civ.Pro. 12(b)(6).

## III. Neither the FDCA nor the CSA provides petitioners a private right of action

"Private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval 532 U.S. 275, 286, 121 S.Ct. 1511, 1519 (U.S.Ala.,2001). "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Id.*, *quoting Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 365 (1991) (Scalia, J., concurring in part and concurring in judgment). A "cause of action" is "a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court."

9

*Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979). The "cause of action" is part of a petitioner's claim. *Id.* at 239.

"'The question whether Congress … intended to create a private right of action [is] definitively answered in the negative'" where a "'statute by its terms grants no private rights to any identifiable class.'" *Gonzaga University v. Doe*, 536 U.S. 273, 283-284 (2002), *quoting Touche Ross & Co. v. Redington,* 442 U.S. 560, 576 (1979). Neither of the statutes that petitioners rely on grants them any private rights.

The FDCA provides that "[a]ll … proceedings for the enforcement, or to restrain violations of [the FDCA] shall be by and in the name of the United States." 21 U.S.C. §337(a).[3] The FDCA therefore does not create a private right of action. *Gile v. Optical Radiation Corp.,* 22 F.3d 540, 544 (3d Cir. 1994); *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1139 (4th Cir. 1993); *Pacific Trading Co. v. Wilson & Co., Inc.,* 547 F.2d 367, 370 (7th Cir. 1976). Thus, only the government or one of its agencies can prosecute violations of the FDCA. Petitioners cannot do so.

---

[3] The only exception to this rule is that a State, acting in its own name, may enforce certain portions of the FDCA dealing with food. 21 U.S.C. §337(b)(1). Petitioners do not fit that exception.

Case 2:09-cv-04095-NKL   Document 29   Filed 08/27/09   Page 10 of 22

Petitioners likewise cannot show that they can privately enforce the CSA. There is no indication that either 21 U.S.C. §829, the specific section of the CSA at issue here, or the remainder of the Act, §§801-971 contain either an express or implied private right of action. The text of §829(b) amply demonstrates that point:

> Except when dispensed directly by a practitioner, other than a pharmacist, to an ultimate user, no controlled substance in schedule III or IV, which is a prescription drug as determined under the Federal Food, Drug, and Cosmetic Act [21 U.S.C.A. § 301 et seq.], may be dispensed without a written or oral prescription in conformity with section 503(b) of that Act [21 U.S.C.A. § 353(b)]. Such prescriptions may not be filled or refilled more than six months after the date thereof or be refilled more than five times after the date of the prescription unless renewed by the practitioner.

There is no express private right of action in this garden-variety criminal statute. Thus, Congress did not intend to create a private right of action. *See McCallister v. Purdue Pharma L.P.*, 164 F.Supp.2d 783, 793 (S.D.W.Va. 2001) ("The Court agrees with Plaintiffs' representation that a careful review of the [FCSA] establishes no Congressional intent to create a private, civil right of action").

Petitioners lack a valid cause of action. They therefore fail to plead a claim upon which relief may be granted.

Case 2:09-cv-04095-NKL   Document 29   Filed 08/27/09   Page 11 of 22

## IV. Petitioners' pleaded facts are insufficient to support their legal claims

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949. A court need not accept the pled legal allegations as true. *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

Petitioners allege the following facts:

67. Defendants are responsible for carrying out executions in the State of Missouri.
68. Defendants intend to execute the plaintiffs by injecting them with sodium thiopental, pancuronium bromide, and potassium chloride.
69. No doctor will be purchasing the lethal injection chemicals.
70. Either defendant Lombardi or defendant Larkins or defendants Doe 2-40, acting on the orders of defendant Lombardi or defendant Larkins, will purchase the lethal injection chemicals.

12

71. Neither defendant Lombardi nor defendant Larkins is a licensed physician.
*****
81. A doctor medically licensed to administer sodium thiopental will not be administering sodium thiopental to the plaintiffs.
82. A doctor medically licensed to administer sodium thiopental will not be obtaining sodium thiopental for use as a lethal injection chemical.
83. A doctor medically licensed to administer sodium thiopental will not be prescribing sodium thiopental to the plaintiffs.
*****
86. No licensed medical practitioner will be obtaining or using pancuronium bromide or potassium chloride for the purpose of executing the plaintiffs.

Doc. 1 at 12-13, 14, 16.

On the basis of these facts, petitioners argue that there is a divergence between Missouri's execution procedures, a state law, and two federal laws, the CSA and the FDCA, and that the federal laws prevail under the Supremacy Clause. This argument is a preemption argument. The Eighth Circuit has held that "preemption, which is grounded in the Supremacy Clause of the Constitution … requires that a state law 'give way' when it 'conflicts with or frustrates federal law.' *Fletcher v. Burlington Northern and Santa Fe Ry. Co.*, 474 F.3d 1121, 1125 (8th Cir. 2007); *Chapman v. Lab One,* 390 F.3d 620, 624 (8th Cir. 2004).

Preemption occurs when: "(1) Congress explicitly prohibits state regulation in an area; (2) Congress implicitly prohibits state regulation by pervasively occupying the area; (3) state law directly conflicts with federal law; or (4) a federal agency, acting within the scope of its delegated authority, intends its regulations to have preemptive effect." 474 F.3d at 1126-1127. Petitioners argue in this case that Missouri's lethal injection process conflicts with the CSA and the FDCA. They are wrong under the pleaded facts or any other set of facts.[4]

## A.    Congress does not prohibit Missouri from enacting and enforcing state laws regulating controlled substances

Congress has not explicitly or implicitly prohibited the states from regulating controlled substances and their distribution. To the contrary, Missouri has a robust law regulating controlled substances. Mo.Rev.Stat. Chapter 195 (2000). Every other state and the District of Columbia have similar statutes. Missouri and other states openly regulate pharmacists, regulate controlled substances, and imprison people based on their convictions for violating state controlled

---

[4] Only one published case addresses preemption in the context of this case. *State v. Deputy*, 644 A.2d 411, 417-420 (Del. Super. Ct. 1994), *affirmed* 648 A.2d 423 (Del. 1994). There, a Delaware trial court held that CSA and the FDCA did not preempt Delaware's procedure for lethal injection.

substance laws. Congress surely is aware of those-well known facts. The only inference that can be drawn is that Congress did not intend, either implicitly or explicitly, to bar the states from regulating controlled substances under either the CSA or the FDCA.

Congress also has not set a national standard for lethal injections. Thus, Congress has not barred the states from conducting lethal injections by lethal injection using sodium thiopental, pancuronium bromide, or potassium chloride. To the contrary, the federal government uses sodium thiopental, pancuromium bromide, and potassium chloride in executions by lethal injection that it conducts.[5] It is nonsensical to assume that the federal government may conduct lethal injections but that Congress has made it illegal for the states to use the same lethal injection procedure.

_____

[5] *Addendum To BOP Execution Protocol, Federal Death Sentence Implementation Procedures* (2007) at ¶C. The addendum is part of the appendix to the United States's *amicus* brief in *Baze v. Rees*, no. 07-5439 (U.S.) and may be found at http://www.abanet.org/publiced/preview/briefs/pdfs/07-08/07-5439_RespondentAmCuUSA.pdf.

**B.     No federal agency prohibits Missouri from conducting executions via lethal injection**

No federal agency has stated that Missouri or any other state

cannot use sodium thiopental, pancuronium bromide, and potassium

chloride in a lethal injection. To the contrary, the FDA has stated that

> Generally, enforcement proceedings in this area are initiated only when there is a serious danger to the public health or a blatant scheme to defraud. We cannot conclude that those dangers are present under State lethal injection laws, which are duly authorized statutory enactments in furtherance of proper State functions...."

*Heckler v. Chaney*, 470 U.S. 821, 824-825 (1985). Missouri's method of

lethal injection therefore is not contrary to any regulations by a federal

agency, much less a federal regulation intended to have a preclusive

effect.

**C.     Missouri's method of lethal injection does not contradict federal law**

A federal law preempts a state law when, "under the

circumstances of [a] particular case, [the challenged state law] stands

as an obstacle to the accomplishment and execution of the full purposes

and objectives of Congress." *Crosby v. National Foreign Trade Council*,

530 U.S. 363, 373 (2000) (changes in original), *quoting Hines v.

Davidowitz*, 312 U.S. 52, 67 (1941). The question of whether the state

16

law is a "sufficient obstacle" is based on "the federal statute as a whole," "its purpose," and its "intended effects." *Id.*

The purpose of the Controlled Substances Act in general is "to deal in a comprehensive fashion with the growing menace of drug abuse." H.R.Rep. No. 91-1444, 1970 U.S.C.C.A.N. 4566, 4567. The purpose of 21 U.S.C. §829(b), the principal statute petitioners rely on, is to "ensure[ ] [that] patients use controlled substances under the supervision of a doctor so as to prevent addiction and recreational abuse" and "bar[ ] doctors from peddling to patients who crave the drugs for those prohibited uses." *Gonzales v. Oregon*, 546 U.S. 243, 274 (2006).

Sodium thiopental, the sulfur analogue to sodium pentobarbitol, is a Schedule III controlled substance. 21 CFR §1308.13(c)(1)(iii). Missouri's use of thiopental in lethal injections, however, does not and cannot lead to drug abuse or addiction because the person receiving the thiopental will die after one dose. The sole purpose of the thiopental is to execute the inmate in a strictly controlled and regulated procedure. Missouri's method of lethal injection therefore does not present a danger of drug addiction or recreational abuse and therefore is not contrary to the purpose of the CSA.

17

The FDCA's main purpose is to "prohibit the movement in interstate commerce of adulterated and misbranded foods, drugs, devices and cosmetics." *United States v. 1851 Cartons, Etc.*, 146 F.2d 760, 761 (10th Cir. 1945). Missouri's use of thiopental does not affect the interstate flow of adulterated or misbranded drugs in any way. Further, 21 U.S.C. §353(b)(1), upon which the petitioners rely, states that

> a drug intended for use by man which--because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug… shall be dispensed only (i) upon a written prescription of a practitioner licensed by law to administer such drug.

This purpose of this statute is self-evident: protecting the public from dangerous drugs by limiting the use of those drugs to medically supervised situations. That purpose is not contravened here. Missouri uses thiopental in executions specifically because thiopental causes death at high doses. Missouri's use of thiopental in executions will not affect the general public. Further, put bluntly, the purpose of an execution is death. Safety, measured as the lack of adverse effects on a

Case 2:09-cv-04095-NKL   Document 29   Filed 08/27/09   Page 18 of 22

person, is not at issue in an execution. Thus, Missouri's procedures do not conflict with the purpose or the text of the FDCA.

Petitioners also argue that the Missouri Department of Corrections cannot use sodium thiopental, pancuromium bromide, or potassium chloride for lethal injections because the FDA has not tested it and found that it is safe for use during executions. Then-Chief Justice Rehnquist described this claim as "implausible." *Heckler v. Chaney*, 470 U.S. 821, 827 (1985). That is an understatement. There is no drug that is "safe"[6] to use to execute a person. The goal of an execution is not safety. It is death. This portion of petitioner's claim is frivolous.

Missouri's use of sodium thiopental, pancuromium bromide, and potassium chloride in lethal injections does not create a conflict with the congressional goal of eradicating drug abuse. Further, the Executive Branch of the federal government has not prevented an execution in

---

[6] To the extent that petitioners use "safe" to mean "constitutional," their claim fails also. The Eighth Circuit has held that Missouri's execution protocol satisfies the Eighth Amendment's requirements. *Taylor v. Crawford*, 487 F.3d 1072, 1074 (8th Cir. 2007), *cert. denied* 128 S.Ct. 2047 (2008). The Eighth Circuit specifically held that "the State's written protocol does not present any substantial foreseeable risk that the inmate will suffer the unnecessary or wanton infliction of pain. The [protocol] renders any risk of pain far too remote to be constitutionally significant." *Id*. at 1085.

19

Missouri or any other state based on the chemicals used in lethal injections despite the fact that the names and doses of the lethal chemicals are well-known. In fact, the federal government uses the same chemicals to perform its executions. Thus, far from conflicting with federal law, Missouri acts in the same manner as the federal government with regard to lethal injections. There is no preemption here. Petitioners therefore fail to state a claim upon which relief may be granted.

## Conclusion

This Court should dismiss the petition either for lack of subject-matter jurisdiction or for a failure to state a claim upon which relief may be granted.

Respectfully submitted,

CHRIS KOSTER
Attorney General


/s/ Andrew W. Hassell
ANDREW W. HASSELL
Assistant Attorney General
Missouri Bar No. 53346

P. O. Box 899
Jefferson City, MO 65102
(573) 751-3321
(573) 751-3825 Fax
andrew.hassell@ago.mo.gov

*Attorneys for Respondent*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via this Court's ECF system on August 27, 2009, to the following:

Mr. John Simon
*Attorney for Petitioners Middleton and Bucklew*

Ms. Jennifer Merrigan
Mr. Joseph Luby
*Attorneys for Petitioner Winfield*

Ms. Cheryl Pilate
Ms. Rebecca Kurz
*Attorneys for Petitioners Ringo, Middleton, and Bucklew*

Mr. David Barron
*Attorney for all petitioners*


/s/ Andrew W. Hassell
ANDREW W. HASSELL
Assistant Attorney General