IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| RICHARD D. CLAY et. al, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 09-4095-CV-C-NKL |
| ) | |
| GEORGE A. LOMBARDI, STEVE ) | |
| LARKINS, JOHN DOES 2-40, ) | |
| ) | |
| Defendants. ) | |

**MOTION FOR STAY OF EXECUTION
SCHEDULED FOR JANUARY 12, 2011 AT 12:01 A.M.**

Plaintiff Richard D. Clay moves the court for an order staying his execution, now scheduled for Wednesday, January 12, 2011 at 12:01 a.m.

**I. Introduction.**

In this case, Richard Clay and sixteen other condemned prisoners seek both declaratory and injunctive relief on their claims that the Food, Drug, and Cosmetics Act (FDCA) and the Controlled Substances Act (CSA) preempt the State of Missouri's chosen method of lethal injection. Twice this Court has declined to dismiss the case. Each time, the court necessarily held that Plaintiffs' claims are "plausible" under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Further, on November 30, 2010, this Court granted the plaintiffs' renewed motion for leave to file an amended complaint adding a claim for injunctive relief under 42 U.S.C.

§1983. This order was entered after this Court had denied a stay of execution to plaintiff Roderick Nunley.[1]

On Tuesday, the defendants plan to kill Mr. Clay by injecting him with sodium thiopental (to render him unconscious so he does not feel pain from the other drugs), pancuronium bromide (a muscle relaxant that stops breathing and other movement and will prevent Mr. Clay from communicating any distress), and potassium chloride (an extremely painful drug which stops the heart). The first of these drugs, sodium thiopental, is a Schedule III controlled substance. State actors administer it for the medically therapeutic purpose of preventing pain – a step necessary in order for Missouri's protocol to comport with the Eighth Amendment. See *Baze v. Rees*, 553 U.S. 35, 53 (2008) ("It is uncontested that, failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and from the injection of potassium chloride."). That, anyway, is what the Defendants told the Eighth Circuit Court of Appeals in order to have their protocol upheld under the Eighth Amendment. *Taylor v. Crawford*, 487 F.3d 1072, 1082-84 (8th Cir. 2008) (relying on thiopental and involvement of medical personnel); Case No. 06-3651, Appellants' Br., at 41 (available at 2006 WL 3857886) ("The first chemical, thiopental, renders the condemned unconscious so that the execution is humane.")

If Mr. Clay is denied a stay, there is a significant risk that he will suffer unnecessary and severe pain from the lethal injection process.

---

[1] As the Court is doubtless aware, Mr. Nunley's execution was stayed on other grounds.

**II. Standard of review.**

In a case such as this, a court must weigh three considerations in deciding whether to stay an execution. These include whether the plaintiff shows a "significant possibility" of success on the merits, the balance of harms from denying or issuing a stay, and whether the underlying suit reflects unreasonable delay. *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004); *Nooner v. Norris*, 491 F.3d 804, 808 (8th Cir. 2007).

**III. Procedural background.**

This Court has now three times denied defense motions to dismiss on the merits prior to trial. The Court first denied the defendants' motion to dismiss for failure to state a claim on which relief can be granted, recognizing that the FDCA and CSA were implicated in the suit:

> Where the Eighth Amendment requires protocols that include adequate safeguards against unnecessary pain, see *Taylor*, 487 F.3d at 1084, and superior courts have indicated that the involvement of medical professionals and rules for administration enhances such safeguards, the safeguards provided by the CSA and FDCA are not irrelevant. At least at this stage of litigation, Plaintiffs' claims do not appear to run contrary to the purposes of the CSA and FDCA.

Doc. 72, pp. 18-19.

Some five months later, this Court partly granted and partly denied the defendants' motion for judgment on the pleadings. See Doc. 138. The Court found that the plaintiffs lack a private right of action to proceed directly under the FDCA

and the CSA. But the plaintiffs also pleaded that the defendants are violating the Supremacy Clause. This Court ruled that plaintiffs could proceed further on a claim under the Supremacy Clause and *Ex parte Young*, 209 U.S. 123 (1908), that federal law preempts the State's execution method. The court cited numerous cases for the well-established principle that a plaintiff may proceed on a claim that federal law preempts state law, even when the preemptive federal law does not confer a private right of action.

Following this Court's order that the case could proceed on pre-emption grounds, the defendants sought an interlocutory appeal to the Eighth Circuit. Although this Court granted permission to appeal, the Eighth Circuit declined to allow the appeal, implicitly finding that the defendants could not show a substantial possibility of success on appeal. This Court then granted in part the plaintiffs' motion for leave to file their amended complaint.

In granting leave to file the amended complaint, this Court first found that the plaintiffs have not engaged in "undue delay, bad faith or dilatory motive[s]." Doc. 167, p. 3. Then, the Court again rejected the defendants' argument that the plaintiffs could not prevail on the merits: "Further, the Court does not entertain here arguments by Defendants that appear to relitigate whether Plaintiffs' complaint states a claim for preemption; the Court has held that it does." *Id.* Based on these findings, this Court granted the plaintiffs leave to amend their complaint to include claims for injunctive relief and for relief under 42 U.S.C. §1983. The

amended complaint also added drugs other than sodium thiopental to the list of drugs allegedly prescribed and administered in violation of the FDCA and CSA.

Since the filing of the amended complaint and the defendants' answer, the parties have proceeding diligently with discovery in this matter. Dispositive motions are now due January 21, 2011. But, of course, that will be too late for Mr. Clay.

Recently, the defendants divulged in discovery, and also in response to a Freedom of Information Act request of the American Civil Liberties Union's St. Louis affiliate, that because of a shortage of sodium thiopental, they are conducting "practice runs" of the execution without using actual sodium thiopental.[2] The failure to use the actual drug is significant. In the earlier litigation in this matter, a doctor who was then in charge of Missouri's executions testified that he had reduced the dosage of sodium thiopental because of the difficulty of administering a solution with the proper concentration. Obviously, it matters, for practice purposes, whether a syringe is filled with water or sodium thiopental.

**IV. Mr. Clay can demonstrate a "significant possibility" of success on the merits.**

Mr. Clay need not demonstrate that he is "likely" to succeed on the merits, or that he will probably do so. He need only show a "significant possibility" of such success, as opposed to a showing that plaintiffs merely raise "serious questions." *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Jones v. Hobbs*, 604 F.3d 580, 581-582

---

[2] Exhibit 1, "ACLU questions Missouri's supply of execution drug," St. Louis Post-Dispatch, January 6, 2011.

(8th Cir. 2010). The Court in *Jones* rejected the State's argument that a stay required a "likelihood" of success, instead holding that the prisoner need only demonstrate "a significant possibility of success on the merits." See *id.* at 581; see also *id.* at 582 (Melloy, J., dissenting) ("I read the majority opinion in this case to reject the State's argument that the heightened standard of proof articulated in *Planned Parenthood v. Rounds*, 530 F.3d 724 (8th Cir. 2008), applies to stays of execution. Rather, the standard set forth in *Hill v. McDonough*, 547 U.S. 573, 584 (2006), applies. As the majority notes, the *Hill* case requires that inmates seeking to challenge the manner of execution must show a significant possibility of success, rather than the *Planned Parenthood* standard of a likelihood to prevail on the merits.")

In determining whether a stay is required, this Court's prior orders allowing the case to proceed on the merits are clearly relevant. The standard for surviving a motion to dismiss – as well as the identical standard for surviving a motion for judgment on the pleadings – is remarkably similar to the standard for obtaining a stay on a method-of-execution claim:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The *Iqbal* requirement of "plausibility" resembles the *Hill* requirement of a "substantial possibility" of success. Both standards require less than a "probability" or "likelihood" of prevailing on the merits. Compare *Iqbal,* 129 S. Ct. at 1949 (no "probability requirement"), with *Jones v. Hobbs*, 604 F.3d 580, 581-82 (8th Cir. 2010) (rejecting a "likelihood" requirement). Both standards require something more than a metaphysically conceivable chance of success. Compare *Iqbal*, 129 S. Ct. at 1949 ("sheer possibility" insufficient), with *Jones*, 604 F.3d at 581 (insufficient that claims raised "serious questions"). The standards for a stay and for surviving a motion to dismiss are not identical, but the fact that this Court has now three times held that the plaintiffs' claims are sufficient to proceed further certainly supports the grant of a stay.

Mr. Clay and the other plaintiffs have a significant possibility of prevailing on their Supremacy Clause claim. Defendants' method of execution is "preempted" in numerous respects under the district court's rationale. First, the defendants have admitted that they have a standing and express policy of not obtaining a valid medical prescription for sodium thiopental, pancuronium bromide, or potassium chloride.[3] That practice "positively conflict[s]" with the CSA, which, as to sodium thiopental, forbids the dispensing of any Schedule III or Schedule IV controlled substances without a prescription. See 21 U.S.C. § 829(b). It is similarly "impossible" for someone to comply with defendants' stated practice and, at the same time, to comply with the FDCA, which requires that otherwise potentially

---

[3] See Eighth Circuit Case No. 10-8024, Petition for Permission to Appeal (filed Aug. 27, 2010), at 14 (absence of prescriptions "not in dispute").

dangerous "drugs" shall be dispensed only "(i) upon a written prescription of a practitioner licensed by law to administer such drug, or (ii) upon an oral prescription of such practitioner which is reduced promptly to writing and filed by the pharmacist . . . ." 21 U.S.C. §353(b)(1).

Further, the written execution protocol requires the lethal injection drugs to be administered by two "non-medical" employees of the DOC. See Exhibit 2, (protocol), at 1 ¶ A(4); id. at 2 ¶E(1). They are supervised by "medical personnel," who may be physicians, nurses, or emergency medical technicians. Id. at 1, ¶¶A(3)-(4). Non-medical personnel, then, perform what amounts to an "IV Push." They administer the drugs by pressing the syringes at a certain rate, and thereby control the flow rate of the three chemicals. To administer a drug is to "dispense" it. *United States v. Harrison*, 628 F.2d 929, 930 (11th Cir. 1980). The protocol's requirement of administration by non-medical personnel "positively conflicts" with the CSA under 21 U.S.C. §822(a), which forbids "dispensing" of controlled substances without a registration from the United States Attorney General. The protocol also conflicts with the FDCA by allowing the nonmedical personnel to be supervised by a nurse or EMT, as opposed to a "practitioner licensed by law to administer such drug." 21 U.S.C. §353(b)(1)(B).

Finally, even beyond the role of non-medical personnel, the State's procedures "positively conflict" with the CSA's prohibition against distributing or dispensing controlled substances without a DEA registration. See 21 U.S.C. §822(a). To date, defendants have not shown that any execution team personnel possess

8

such registrations. Rather than producing and redacting whatever registration the team members may or may not have, the State has defended on the ground that the prison in which executions take place has a DEA registration for its pharmacy, and that the prison itself is a licensed medical "practitioner." See Suggestions in Opposition to Plaintiffs' Motion to Compel and Plaintiffs' Motion for Discovery (Doc. 99), at 4-5. There is a "significant possibility" that this Court will soundly reject that argument, and with it, the implication that non-medical employees such as hospital janitors may freely dose controlled substances as long as the employing hospital has a DEA registration. See also 21 U.S.C. §802(21) (defining "medical practitioner" as one who is engaged in "professional [medical] practice or research").

**V. The balance of harms favors Mr. Clay**

If Mr. Clay is executed on Tuesday night without resolution of the issues in this case, he will be subject to a significant risk of irreparable harm because he may be subject to severe and unnecessary pain. As this Court recognized when it denied the defendants' motion to dismiss:

> A fair reading of the Complaint indicates that Plaintiffs seek to redress the risk of inhumane lethal injection by clarifying that the precautions required by the CSA and FDCA apply. If the CSA and FDCA apply, they provide safeguards against improper use of lethal injection chemicals by assuring that medical practitioners are adequately involved in the use of those chemicals. If the statutes apply to lethal injection, ignoring those safeguards, as Plaintiffs allege Defendants intend to do, places Plaintiffs at risk.

Doc. 72, at pp. 9-10.

The significance of this violation is heightened by recent revelations that to conserve a short supply of sodium thiopental, the execution personnel have been practicing without it. See Exhibit 1.[4] In *Taylor v. Crawford*, 487 F.3d 1072 (8th Cir. 2008), John Doe No. 1, a doctor then presiding over Missouri executions, testified that the concentration of sodium thiopental affects the way it travels through the syringe and IV tubing into the patient. Using a placebo would not allow the team to experience any potential difficulties, and therefore increases the risk to Mr. Clay. Trained medical personnel would be better able to deal with such problems than the non-medical personnel that Missouri allows to kill its condemned prisoners. But as it now stands, Mr. Clay will have the benefit of neither trained medical personnel or non-medical personnel with experience with the actual substance to be used to render him unconscious. The harm to him is manifest and irreparable. The state's interest in executing him promptly pales by comparison.

### VI. Mr. Clay did not unreasonably delay his claims.

Mr. Clay has been litigating various issues regarding lethal injection since 2005, when he intervened as a plaintiff in the case of *Taylor v. Crawford*, No. 05-4173-CV-C-SOW. That intervention came within a short time after the United States Supreme Court denied certiorari in his habeas corpus proceedings on May 15, 2005. He voluntarily withdrew from that litigation when the Court proposed to

---

[4] This information was also disclosed in discovery provided to plaintiffs on July 23, 2010. Those documents are subject to this Court's protective order, but will be filed under seal if this Court desires to review them.

10

resolve it in the four-day period before the then-scheduled execution of Michael

Anthony Taylor, but, after the resolution of *Taylor v. Crawford*, participated as an

original plaintiff in the case of *Clemmons v. Crawford*, Case No. 07-4129-CV-C-

SOW, filed in 2007. He then joined this litigation. He has certainly not been dilatory

in pursuing his remedies against the state's method of lethal injection.

By contrast, the defendants in this lawsuit have, as this Court has found,

consistently delayed the resolution of this issue:

> Plaintiffs issued their first discovery requests in October
> 2009, and Defendants moved to stay discovery pending
> resolution of their motion to dismiss. Defendants chose to
> file a motion for judgment on the pleadings close to three
> months after the Court ruled their amended motion to
> dismiss; but the issues raised in the motion for judgment
> could have been more fully addressed in the original
> motion to dismiss.

Doc. 138, pp. 12-13.

Defendants not only resisted all discovery pending their motion to dismiss,

but later took the position that no discovery was warranted and refused to

cooperate in any discovery. See Doc. 99 (Opposition to Motion to Compel Responses

to Request for Admission and to Permit Discovery). Defendants supported that

position with the untenable argument that the prison at Bonne Terre is itself a

medical "practitioner" and possesses a DEA registration, so that any agent of the

Department of Corrections may freely administer controlled substances and

prescription-only drugs within the facility. *Id.* at 4-5. The court eventually granted

Plaintiffs' motion for discovery. Doc. 102. Nevertheless, even to this date,

Defendants still have not disclosed a single DEA licensing document pertaining to

any individual members of the execution team (as opposed to the prison), and Defendants still have not inquired of their suppliers whether they are aware of the prescription-free manner in which Defendants dispense and administer lethal injection drugs (despite the district court having to disabuse opposing counsel, during a teleconference of June 9, 2010, that they were indeed obligated to seek information from third parties when answering requests for admission). In like fashion, Defendants asserted that plaintiffs lack standing to seek a declaratory judgment because a favorable ruling would not guarantee compliance – only for Defendants to resist all discovery on whether they would comply with an adverse declaratory judgment. See Amended Motion to Dismiss ( Doc. 29), at 2-4; Defendants' Supplemental Brief (Doc. 56), at 8-9 (compliance a matter of "bald speculation"); Suggestions in Opposition to Plaintiffs' Motion to Compel and Plaintiffs' Motion for Discovery ( Doc. 99), at 17-18.

With respect to the "delay" prong of the stay standard, the issue this Court must resolve is whether Mr. Clay brought suit at a time which would allow his claims to be resolved without entry of a stay. As discussed above, Mr. Clay has been litigating lethal injection issues since the time the denial of habeas corpus relief became final. Had the state not engaged in continuing delaying tactics in this and other litigation, the issue would have been resolved long since. The State should not be heard to complain about "delay".

## CONCLUSION

For the foregoing reasons, Mr. Clay prays the Court for a stay of his execution, now scheduled for January 12, 2011, at 12:01 a.m., pending the disposition of this suit.

Respectfully submitted,

/s/ Jennifer Herndon

Jennifer Herndon
224 N. Hwy 67 #122
Florissant, MO 63033
Missouri Bar No. 37921
314-831-5531
jenifer@ix.netcom.com

/S/ ELIZABETH UNGER CARLYLE

Elizabeth Unger Carlyle
P.O. Box 866
Columbus, MS 39703
Missouri Bar No. 41930
 (816) 525-6540
FAX (866) 764-1240
elizcar@lawalumni.neu.edu

ATTORNEYS FOR RICHARD D. CLAY

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading was served upon opposing counsel Michael J. Spillane, Asst. Atty. Gen., and counsel for co-plaintiffs via this Court's electronic filing system on January 6, 2011.

/s Elizabeth Unger Carlyle

ELIZABETH UNGER CARLYLE

14
Case 2:09-cv-04095-NKL   Document 182   Filed 01/06/11   Page 14 of 14