IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EARL RINGO JR. et al. ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 09-4095-CV-C NKL |
| ) | |
| GEORGE A. LOMBARDI et al., ) | |
| Defendants. ) | |

**REPLY SUGGESTIONS IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**Standing**

Plaintiffs allege that they have standing to pursue this suit because they allegedly suffer an injury in fact, when the anesthesiologist does not personally push the plunger that introduces the lethal chemicals into the IV port, and when the anesthesiologist does not write a prescription for non-medical personnel to push the plunger. Plaintiffs allege that in a clinical surgical procedure the anesthesiologist would push the plunger himself and that he would personally select the chemicals used. Plaintiffs link the lack of a prescription to the alleged injury of the anesthesiologist not selecting the execution chemicals. (Document 226, 19-23).

An injury in fact, necessary to create standing, must be an invasion of a legally protected interest which is concrete and particularized, and actual or imminent as opposed to conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs have no legally protected interest in being executed by an anesthesiologist or other physician. *See Taylor v. Crawford*, 487 F.3d 1072, 1084 (8th Cir.

1

2007) *quoting McKenzie v. Day*, 57 F.3d 1461, 1469 (9th Cir. 1995) ("we are aware of no authority for the proposition that the prisoner is entitled, for example, to have a lethal injection administered by a physician."). Similarly, they have no legally protected interest in having an anesthesiologist choose the lethal chemicals. In the *Taylor* litigation, the same expert, who now criticizes the anesthesiologist for not writing a prescription, and therefore causing the alleged harm of not choosing the lethal injection chemicals and dosage, criticized the State for not in the past having a written protocol that overrode the discretion of the physician. *Taylor*, 487 F.3d at 1076.

Plaintiffs are essentially arguing that an execution must follow the same procedure as a clinical surgery and that they suffer an injury in fact, if it does not. But the United States Court of Appeals has rejected the idea that the State must use procedures that may be medically optimal in clinical contexts and has held that the State has broad discretion to determine the procedures to conduct an execution. *Taylor*, 487 F.3d at 1084. Plaintiffs fail to demonstrate a legally protected interest harmed because the physician does not conduct the execution himself or write a prescription for others to do it.

### Attempt to distinguish authorities rejecting similar claims

Plaintiffs attempt to distinguish the numerous decisions that have rejected similar or identical claims on the basis that those decisions in Plaintiffs' view do not deal with the issue of preemption with sufficient clarity to provide any guidance to this Court. (Document 226, 16-19). Of course, those decisions provide guidance. It is illogical to argue, as Plaintiffs in essence do, that court after court rejected claims similar or identical to those made by Plaintiffs because the litigants in those cases failed to recite some magic

formula bringing the preemption issue to those courts' attention, rather than because the claims had no merit. This is particularly true in decisions such as *Bowling v. Haas*, Slip Op., 2010 WL 3825467 (E.D. Ky., September 23, 2010), that specifically referenced the Supremacy Clause, and *West v. Ray*, Slip Op., 2010 WL 3825672 (M.D. Tenn., September 24, 2010), that specifically discusses this Court's preemption analysis.

## The plain statement rule

Plaintiffs allege that the plain statement rule does not apply because it allegedly only deals with how the States define themselves as sovereigns as opposed to policy choices. (Document 226, 20-22). Plaintiffs' analysis is inconsistent with the holding of *Oregon v. Ashcroft,* 368 F.3d 1118, 1125 (9th Cir. 2004) (applying the plain statement rule to prevent an attempt to use the CSA to regulate the use of controlled substances in physician-assisted suicides). Similarly, *Gonzalez v. Oregon*, 546 U.S. 243, 274 (2006), found that analysis under the plain statement rule was appropriate but unnecessary because regulation of physician-assisted suicide was so clearly not controlled by the text of the CSA.

Plaintiffs also allege that even if the plain statement rule applies to policy choices, it does not apply in this case because regulation of State executions under the FDCA and CSA would not alter the balance between Federal and State authority. (Document 226, 30-32). Of course it would. Congress has never regulated how the States executed offenders under State law. To read the FDCA and CSA as regulating State executions would alter the existing balance between the States and the Federal Government.

## Sovereign immunity

3

Plaintiffs argue that the State is not immune from this suit under the Eleventh Amendment because the CSA and FDCA do not preclude preemption suits against State actors. (Document 226, 33-36). Plaintiffs allege the *Union Elec. Co. v. Missouri Dept. of Conservation*, 366 F.3d 655 (8th Cir. 2004), stands for the proposition that an *Ex Parte Young* action cannot lie where Federal law forbids it (Document 226 at 34). Plaintiffs make Defendants' point with this argument. The FDCA and CSA may only be enforced by the Federal Executive, regardless of who the defendant is. That is the intent of Congress. That intent cuts off private enforcement suits against the States brought under an *Ex Parte Young* theory just as it cuts off suits against other defendants, not brought by the Federal Executive. As in *Union Electric*, the Eleventh Amendment prevents a plaintiff using *Ex Parte Young* to bring suits, which are contrary to the intent of the statutes sought to be enforced, against the Several States, just as those suits cannot be brought against other defendants.

## Violation of the CSA and FDCA

Plaintiffs argue that *Gonzales v. Oregon*, 546 U.S. 243 (2006), is distinguishable because in Oregon, physician-assisted suicide is accepted medical practice, but execution by lethal injection is not medical practice. (Document 226, 29-30). In *Gonzalez v. Oregon*, 546 U.S. at 274, the United States Supreme Court found that the prescription requirement of the CSA could not be used to regulate physician assisted suicide because, read in context, the prescription requirement of the CSA "is a provision that ensures patients use controlled substances under the supervision of a doctor so as to prevent addiction and recreational abuse … as a corollary the provision also bars doctors from

peddling to patients who crave drugs for those prohibited users." *Id*. at 274. This reasoning applies to execution by lethal injection as well as to physician assisted suicide. Like physician assisted suicide, execution by lethal injection has nothing to do with peddling drugs to recreational users or addicts.

Plaintiffs next argue that the FDCA is violated because 21 U.S.C. §353(b)(1) applies to physicians as well as to pharmacists. (Document 226, 31-33). That argument misses the point that 28 U.S.C. §353(b)(1) defines dispensing a drug without a prescription as a subclass of the conduct prohibited by 28 U.S.C. §331(k) of misbranding a drug while holding it for sale. That provision deals with selling prescription drugs as over-the-counter medication. It has nothing to do with executions by lethal injection. Executions do not involve holding drugs for sale.

Plaintiffs allege that the FDA's non-enforcement of the FDCA in the context of executions does not counsel against Plaintiffs' claims. (Document 226, 41-42). Plaintiffs allege that the FDA's views expressed in *Chaney v. Heckler*, 470 U.S. 821 (1985), and elsewhere do not hurt Plaintiffs. Defendants disagree. The FDA's view, expressed in *Chaney,* that it does not have jurisdiction over executions should be given some weight.

But even more weight should be given to the fact that Congress has never expressly stated its intention to preempt State law on lethal injections under the Act, despite the coexistence of the FDCA and the State lethal injection procedures for decades. *See Wyeth v. Levine*, 129 S.Ct. 1187, 1194-1195 (2009) (holding that it is presumed Congress did not intend the FDCA to preempt the powers of the States in areas the States have traditionally occupied). *See also Id.*at 1200 (holding that if Congress had

5

intended to the FDCA to preempt States law on drug labeling, it would have expressly said so during the seventy-year history of the Act). Similarly, if Congress had intended the FDCA or the CSA to preempt State law on executions by lethal injection, it would have expressly said so during the many years it has had that opportunity, when the CSA, the FDCA and execution by lethal injection have coexisted. It has not done so.

## Conclusion

Summary judgment should be granted for Defendants.

Respectfully submitted,

**Chris Koster**
Attorney General
/s/Michael J. Spillane

**Michael Spillane**
Assistant Attorney General
Missouri Bar No. 40704
P.O. Box 899
Jefferson City, MO 65102
Telephone: (573)751-7406
Facsimile: (573)751-2096

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was filed electronically on February 16, 2011 and should be served electronically on counsel for all Plaintiffs.

/s/Michael J. Spillane