IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| EARL RINGO, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:09-cv-04095 BP |
| ) | |
| GEORGE A. LOMBARDI, et al., ) | |
| ) | |
| Defendants. ) | |

**REPLY SUGGESTIONS
IN SUPPORT OF INTERVENOR'S MOTION FOR HIS COUNSEL TO REVIEW
*EX PARTE* PORTIONS OF DEFENDANTS' SECOND SUPPLEMENTAL BRIEF**

Intervenor Larry Flynt forcefully rejects Defendants' repeated assertion that he seeks to uncover and publish the identities of Missouri's execution team through this litigation. (*E.g.*, ECF No. 324 at 1, 8.) This assertion—which appears to be based on Intervenor's longstanding opposition to the death penalty—distorts his intent to perform a fact-checking function on behalf of the public.[1] Publishing the identities of the execution-team members is *not* his goal, and there

---

[1] Intervenor moved to unseal the records in this case because he had reason to distrust key evidence in a case of undisputedly substantial public import. Learning the identities of the execution-team members whose testimony informed the Court's decision would hypothetically be *one way* to advance the public interest in transparency, but it is *not the only way*. Unsealing the judicial records sought would allow, for example: (1) scrutiny, by medical personnel, of deposition testimony that relates to intravenous injection procedures to ensure execution-team members had been properly trained; (2) review of deposition testimony that discusses execution-team members' characterization of, and attitudes toward, their roles in the execution process in order to inform state policymaking (for example, perhaps the public has an interest in a larger or smaller execution team or the inclusion of persons with different types of expertise); (3) comparison of the form and format of the licenses and certificates filed in this Court to similar documents from the same issuing agencies to ensure the filed certificates had not been forged or altered; (4) public consideration of the weight the Court gave to certain portions of deposition testimony when seen in context and along with the rest of the evidence; and (5) potential *reinforcement* of public confidence in and support for execution protocol by revealing some exception currently unknown to Intervenor that permits M3—without acting deceptively—to maintain board certification while participating in the execution process from a board that declares it revokes certification of persons who participate in the execution process. These are examples of the public interest in the records that Intervenor asserts that are utterly unrelated to publication of identities of the execution-team members. Although these issues relate to the underlying motion to unseal, rather than to the instant motion, Defendants' continuing speculation about Intervenor's goal has infected its arguments opposing both motions and therefore merited correction.

is nothing in the record that would even *suggest* that is his goal. In fact, that course of action is explicitly prohibited by state law. *See* Mo. Rev. Stat. § 546.720.3. Furthermore, *even if it were his goal*, it would be utterly irrelevant to this motion because Intervenor *will not see* the unredacted brief even if the Court rules in his favor.

Turning to the substance of Defendants' response, the instant motion is well founded and timely, appropriately narrow, and necessary to obtain effective appellate review.

I. *This motion is well founded and timely*

Viewing charitably Defendants' assertion that the brief is not really *ex parte*, there may be some debate over whether an intervenor qualifies as a "party" for all purposes from inception to termination of a case, but there is no question whatsoever that an intervenor is a party for the purpose of his own motion. *See, e.g.*, Fed. R. Civ. P. 24(a) and (b) (describing permissive and by-right intervenors under the heading "Parties"); *Diamond v. Charles*, 476 U.S. 54, 68 (1986) ("intervenors are considered parties"); *Shaw v. Hunt*, 154 F.3d 161, 164-65 (holding that intervenors can be "prevailing parties" for civil rights fee awards and collecting cases from other circuits). The four pages of redacted arguments—made in opposition to Intervenor's own motion—are unquestionably *ex parte*.[2]

Yet conspicuously absent from that timeline is any motion by Defendants to make their arguments *ex parte* that would have provided a procedurally proper opportunity for Intervenor to respond. In response to a statement imbedded in their first supplemental brief, the Court invited Defendants to file "public and sealed" versions of a followup brief, and that is what Intervenor expected them to do. When Defendants took a different tack, Intervenor anticipated the Court would rule on whether the "sealed" brief should remain indefinitely obscured from Intervenor's

---

[2] Plaintiffs also cannot access the unredacted version of the brief.

view. But the Court's January 2016 order denying Intervenor's motion to unseal did not include a ruling concerning the *ex parte* portions of the brief.

Before filing this motion, Intervenor exhausted other avenues of obtaining effective appellate review of the Court's order—first, by attempting to resolve what Intervenor assumed was an error preventing his access to the "sealed" brief; second, by considering whether it was an issue over which the appellate court had assumed jurisdiction; third, by attempting to craft an appellate brief absent the *ex parte* arguments; fourth, by attempting to reach an informal agreement with Defendants' counsel for attorney-only review of the *ex parte* portions of the brief; and finally, by doing exactly what Defendants suggest in their response—by filing a post-judgment motion. Although they label the motion an "ambush," Defendants apparently do not dispute that this Court retains jurisdiction over this question after the Notice of Appeal and do not claim any prejudice would result from an attorney-only review of the *ex parte* portions of the brief. The harms Defendants speculate about, even if they were well evidenced, could not even *potentially* result from counsel-only review of the unredacted brief, especially given the precautions proposed by Intervenor.

Defendants rely on *In re Iowa Freedom of Information Council*, 724 F.2d 658 (8th Cir. 1983), to support their opposition to the instant motion. But there are limitations to *Iowa Freedom*'s applicability here. First and most importantly, the challenge in *Iowa Freedom* was to the closure of a contempt proceeding and transcript thereof in an *underlying case*, not a proceeding or argument challenging the merits of the media's petition itself like the brief here. The transcript sought in that case is therefore akin to the underlying judicial records Intervenor seeks, *not* the arguments made in a brief opposing his own motion. The transcript at issue was available to all the parties to the contempt proceeding. In order to make the procedural context

similar to this case, we would have to imagine the *Iowa Freedom* respondents asking to make secret their arguments against the media's petition itself.

Second, the *Iowa Freedom* court noted that—although a transcript was not an adequate substitute for attendance at a court proceeding—the district court had since *opened* most of the transcript of the proceeding it had conducted *in camera*. To the contrary, in this case, the Court has not released any previously redacted sections to Intervenor or anyone else after reviewing the *ex parte* portions of Defendants' brief.

Third, the *Iowa Freedom* court held that it would "insist, in future cases, that the *in camera* consideration be as strictly limited as possible." *Id.* at 662.[3] If a future court determined that trade secrets would be revealed during a proceeding, "it should return to the courtroom, announce this determination, and state that the remainder of the proceeding [would] be conducted *in camera*." *Id.* Here, the Court has made no determination on the record—either before or after receiving Defendants' brief—that it should remain *ex parte* indefinitely. In fact, the *Iowa Freedom* court counseled that the potential disclosure of secrets "and whether their revelation will cause damage to someone" must decided by courts rather than by "interested counsel." *Id.* at 663. Here, unlike in *Iowa Freedom*, no court has yet decided whether Defendants' self-chosen redactions are appropriate.

Fourth, in *Iowa Freedom*, the Eighth Circuit was persuaded that continued sealing of certain portions of the transcript at issue was warranted because of "clear and convincing testimony" that the revelation of the trade secrets would "do considerable damage" to a private business by alerting competitors to its marketing and business plans. *Id.* at 664. But the court "stress[ed] that this case involves private commercial conduct" and noted that "[i]f the material

---

[3] Again, the Court used "*in camera*" to describe a situation where *spectators* would be excluded.

still under seal had some substantial relation to an important governmental or political question, an entirely different question would be presented" that would require carefully weighing the public interest. *Id.* Of course, the partially *ex parte* brief here, unlike the *Iowa Freedom* transcript, has a substantial relation to the public interest in transparent judicial proceedings, not to mention the execution process itself. No court has yet undertaken that balancing, which weighs heavily in favor a party seeking access to arguments made against his own motion.

Fifth, the *Iowa Freedom* court found it significant that the media petitioners had "made no practical suggestion to us . . . as to how the trade secrets could have been protected in some other way" and that media counsel's earlier suggestion that he view the proceeding under a pledge of secrecy had been officially withdrawn. *Id.* at 662 Here, Intervenor has proposed appropriate precautions that will protect the identities of the execution-team members. *See infra*, part II.

## II. <u>This motion is appropriately narrow</u>

Defendants assign all sorts of unscrupulous motivations to Intervenor for making this motion, which Intervenor also emphatically rejects. Neither Intervenor nor his counsel seek the brief in order to learn the identities of the execution-team members. *See* ECF No. 324 at 8 n.1. That is why Intervenor offered to: (1) accept a brief with identifiers still redacted; (2) limit review to his counsel only; (3) take special safeguards to store the brief in a safe, locked location and prohibit the making of any copies; (4) permit Defendants or the Court to review his appellate brief immediately before filing to prevent the unintended disclosure of redactable information; and (5) file his unredacted appellate brief under seal.[4] Intervenor continues to express his

---

[4] Defendants acknowledge these concessions but nonetheless claim that counsel "is silent about whether they would share that information with Flynt." ECF No. 324 at 8 n.1. In case "attorney eyes only" was not clear, Intervenor meant just that: only his attorney would view the *ex parte* portions of the brief. Counsel would share neither the brief, nor any information derived from the brief, with Intervenor. Likewise, given that Defendants

willingness to abide by additional reasonable safeguards Defendants or the Court impose, but Defendants do not propose any.

### III. This motion is necessary to obtain effective appellate review

Defendants made secret arguments to the Court in opposition to Intervenor's motion. The arguments were convincing, and the Court accepted them. The notion that Intervenor need not review them because he can see the Court's decision itself is anathema to the adversarial legal system. *See United States v. Earley*, 746 F.2d 412, 417 (8th Cir. 1984) (holding that an *ex parte* communication from the government was improper despite the "irrelevant" argument that the defendant had "notice of its submittal (and allegedly even a general knowledge of its contents)"). Intervenor is entitled to appellate review, has evinced intent to seek appellate review, and—like every other litigant in every other case—should be able to put forth his best arguments in that appellate forum. He cannot do that if he does not know what the Court found persuasive in ruling against him.

For the reasons provided above, Intervenor respectfully requests this Court grant his motion for counsel to review the *ex parte* portions of Defendants' second supplemental brief with safeguards the Court finds appropriate.

---

characterize Intervenor's offer to share his prefiled appellate brief with Defendants' counsel or the Court as a "prior restraint," it seems likely that suggestion been misunderstood. Intervenor did not offer to permit Defendants to comment upon his draft brief as Defendants appear to believe; he offered to share a copy of the brief for the purpose of determining which words or phrases should be sealed and therefore redacted from the public copy of the brief. To remove any possibility of a misinterpretation of Defendants' involvement, Intervenor could *first* file the sealed version and *then* share the brief with Defendants or the Court for redaction input before filing the public version.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
American Civil Liberties Union
    of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Phone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278
American Civil Liberties Union
    of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
Facsimile: (314) 652-3112
gwilcox@alcu-mo.org

*Attorneys for Intervenor*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy was made available electronically to all counsel of record.

/s/ Anthony E. Rothert